Andrews, J.
This action is brought by the plaintiff, a pilot licensed under the laws of the State of Hew Jersey, to recover of the defendant, the master and consignee of the bark “ Live Oak,” pilotage given by the twenty-ninth section of chapter 469, of the Laws of 1853, entitled “ An act to pro *251 vide for the licensing and government of pilots, and regulating pilotage of the port of New York,” as amended by chapter 243 of the Laws of 1857, upon the ground that the plaintiff on the 8th of February, 1874, at sea off Sandy Hook, first spoke the “Live Oak,” a vessel from a foreign port, sailing under register and bound to the port of New York, and offered his services to the master as pilot, which were refused.
That section provides: “ That all masters of foreign vessels, and vessels from a foreign port, and all vessels sailing under register, bound to or from the port of New Fork by way of Sandy Hook, shall take a licensed pilot; or in case óf refusal to take such pilot shall himself, owners or consignees, pay the said pilotage as if one had been employed; and such pilotage shall be paid to the pilot first speaking or offering, his services as pilot to such vessel.”
The question upon which the right to recover depends, is whether the phrase licensed ¡pilot in this section includes a New Jersey pilot, or such pilots only as are licensed under the provisions of the act.
The act, as the title indicates, relates to pilots of the port of New York. It establishes a “ Board of Commissioners of Pilots,” with authority to license pilots for that port, under the restriction that no license shall be granted to any person holding any license or authority from any other State. It authorizes the commissioners to make rules and regulations for the government of the pilots thus licensed; to revoke licenses granted ; to declare and enforce forfeitures and penalties for direlection of duty, and establishes the fees for pilotage to be allowed to the pilots appointed by the board.
The act does not purport to confer jurisdiction upon the commissioners over pilots appointed by the authority of any other State; and so far as it confers rights or imposes duties or obligations upon pilots, it plainly relates to pilots licensed by the board, unless the provision in question is an exception.
In view of the general purpose of the act, and of the fact that the pilotage fees given by the thirty-ninth section are such as are by the previous section given to pilots licensed *252 by the commissioners, we think that the words licensed pilots in the thirty-ninth section was intended to designate pilots who derive their authority from the appointment of the commissioners, and that no others are entitled to claim the benefit of that section.
By the act of Congress of March 2,1837 (5 Stat. at L., 153), it is provided that the master of any vessel coming into or going out of any port, situate upon waters which are the boundary between any two States, may employ any pilot licensed or authorized by the laws of either, and that part of the thirty-ninth section of our statute, which makes it the duty of a master to take a licensed pilot—meaning, as we construe it, a pilot appointed by the board of commissioners of pilots—and imposing a penalty for a refusal, must, in view of the act of Congress, be read as if the case was excepted of a vessel in charge of a New Jersey pilot, when spoken by a pilot appointed under the act of 1853.
The judgment should be affirmed with costs.
All concur.
Judgment affirmed.